Filed 3/9/22  P. v. Watson CA4/2
Opinion following transfer from Supreme Court
See concurring opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072650 |
| v. | (Super.Ct.No. FVA014260) |
| APRIL LORRAINE WATSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid A. Uhler, Judge.  Reversed

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Daniel B. Rogers, Assistant Attorney General, Michael Pulos, Lynne G. McGinnis, Melissa Mandel, Alan L. Amann and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant April Lorraine Watson filed a petition for resentencing pursuant to Penal Code section 1170.95,[1] which the court denied. On appeal, defendant contended the court erred in summarily denying her petition without proceeding to an evidentiary hearing. On September 18, 2020, we issued an opinion affirming the court's order.

On December 1, 2021, the California Supreme Court transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952, 971-972 (*Lewis*). On December 6, 2021, we vacated our opinion and permitted the filing of supplemental briefs.

In her supplemental brief, defendant contends the court erred in summarily denying her petition without proceeding to an evidentiary hearing. The People concede that defendant made a prima facie case, and the matter should be remanded for an evidentiary hearing. We agree.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant's videotaped statement to the police revealed that "on November 5, 2000, defendant along with Jesse Cantu, David Chavez, and Lester 'Dwayne' Thomas, went to a house . . . three separate times, all for the purpose of getting defendant's

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] On the court's own motion, we take judicial notice of the record in defendant's appeal from the original judgment. (See *People v. Watson* (June 12, 2003, E031790) [nonpub. opn.] (*Watson*).) We take much of our factual and procedural recitation from that opinion, which was included as an exhibit in the People's motion to strike defendant's petition and was relied upon by the trial judge in summarily denying the petition.

2

belongings back. Defendant had lived in the house and purportedly had left some of her things there when she moved out. On their first trip, defendant exchanged words with a heavyset Hispanic woman because the woman refused to let defendant in the house and had called defendant a bitch. Defendant and her three companions were walking back to their cars, about to leave, when Dwayne urged the group to try again to get defendant's 'stuff.' Defendant returned to the front porch of the house and banged on the door, but no one responded. Defendant and her companions drove away after this second unsuccessful attempt to gain entry to the house." (*Watson*, *supra*, E031790, fn. omitted.)

"Around 10:00 p.m. that night, the group returned to the house . . . . Defendant knew that . . . Cantu had a gun with him because he had earlier shown it to her and her grandfather. Defendant, . . . Cantu and . . . Chavez went up to the front door of the house. No lights were on inside the house and no one responded when defendant knocked on the door and rang the doorbell. Dwayne . . . , who had parked his Cadillac down the street, headed to the back of the house by jumping over the fence. After . . . Chavez asked Cantu, 'Who's got Dwayne's back?,' Cantu followed Dwayne . . . and the two of them forced entry into the house by breaking a window and then kicking in the back door. When defendant heard the glass break, she threw a potted plant through a window located near the front door. [Dwayne], who by then was inside the house, opened the front door for defendant and Chavez. Once inside the house, defendant encountered a man whom she did not know standing in the kitchen near the refrigerator. Dwayne . . . and . . . Chavez immediately pushed the man into an office area off the garage." (*Watson*, *supra*, E031790.)

3

"When defendant entered the office after briefly looking around the house for her things, she found Cantu standing over three people who were lying belly down on the floor. One of the people on the floor was the man from the kitchen, another was Connie Estala, the woman with whom defendant had the confrontation earlier that day. The third person was Jerry McCullen, Cantu's one-time best friend. Cantu was holding all three people at gunpoint, although defendant claimed that she did not see the gun until she was leaving the room. Once in the room, defendant kicked . . . Estala in the head and asked Estala where defendant's 'stuff' was. . . . Estala had called 911 apparently as the break-in was occurring. Unbeknownst to defendant and her companions, that phone line was open, and the call was being recorded as Estala [lay] on the floor in the office. According to the transcript of that 911 call, defendant yelled, 'Where is my shit now?' When Estala answered, 'I don't know . . . ,' defendant again said, 'Where's my stuff at? Huh?' The tape then picked up the sound of a gunshot followed by defendant saying, 'Hey, oh enough!' The tape picked up the sound of two more gunshots followed by the sound of labored breathing." (*Watson*, *supra*, E031790.)

". . . Cantu testified for defendant and admitted that he shot and killed all three victims. Cantu stated that he shot and killed . . . McCullen and then had to kill the two others because they had witnessed that shooting. Cantu testified, in pertinent part, that he killed McCullen because McCullen had previously made death threats against defendant whom McCullen believed was a snitch. Cantu stated that as he stood there holding the gun on McCullen, he remembered those threats and just snapped. Cantu had never told defendant about the threats McCullen made against her life. According to Cantu,

4

defendant was not in the room when he shot and killed the three victims. Cantu estimated that the whole incident from the time he entered the house to the time he left after shooting and killing the victims was possibly less than two minutes." (*Watson*, *supra*, E031790.)

Since defendant was not the actual killer of the three murder victims, "the prosecutor relied on two theories of aiding and abetting to prosecute defendant, namely, that defendant aided and abetted either the crime of first degree murder or the crime of assault with a firearm of which murder was the natural and probable consequence." (*Watson*, *supra*, E031790.) The court gave the jury a version of CALJIC No. 3.02,[3] which erroneously instructed it that the crime of murder, rather than assault with a firearm, was the target offense under the latter theory that it must find defendant aided and abetted in order to convict her of murder. (*Watson*, *supra*, E031790.) On April 5, 2002, the "jury found [defendant] guilty . . . of three counts of first degree murder and one count of residential burglary." (*Ibid*.) The jury additionally found true an allegation that a principal was personally armed with a firearm in the commission of a felony. (§ 12022, subd. (a)(1).) The court sentenced defendant to a term of imprisonment consisting of three, consecutive, indeterminate terms of 25 years to life, plus a determinate term of one year. (*Watson*, *supra*, E031790.)

---

[3] On December 27, 2021, defendant filed a request that we take judicial notice of the jury instructions in this case. On January 14, 2022, we reserved ruling on the request. We grant the request.

On appeal from the judgment, defendant challenged the natural and probable consequences theory of liability for murder. Defendant contended insufficient evidence supported the jury's verdict finding her guilty of aiding and abetting a crime of which first degree murder was a natural and probable consequence. Defendant also maintained the jury instructions on the natural and probable consequences theory of criminal liability were incorrect and that the error violated her due process right to a fair trial. (*Watson*, *supra*, E031790.) This court affirmed the judgment. (*Ibid.*)

On January 4, 2019, defendant filed a petition for resentencing pursuant to section 1170.95 alleging she was not the actual killer, did not act with an intent to kill or aid and abet the murder, and was not a major participant or act with reckless disregard for human life in the commission of a crime. The People filed a motion to strike defendant's petition for resentencing arguing section 1170.95 was unconstitutional; the People further argued that defendant was ineligible for relief because, in its opinion on appeal from the judgment, this court had found defendant aided and abetted Cantu with an intent to kill and/or the evidence established that defendant was a major participant in the burglary acting with reckless indifference to human life.

At the hearing on defendant's petition, the court noted it had read the petition, the People's response, and this court's opinion on appeal from defendant's judgment. The court noted: "In the Court of Appeals opinion, it does say that they conclude the evidence is sufficient to support the first-degree murder verdict on both theories of liability the prosecutor relied on at trial. [¶] So based on the fact that the evidence did support the fact that the defendant aided and abetted in the commission of first-degree

6

murder, I'll indicate that she has not made a prima facie showing that she falls within the parameters for resentencing under [section] 1170.95, and the petition for resentencing is denied."

## II.  DISCUSSION

Defendant contends the court erred in summarily denying her petition without proceeding to an evidentiary hearing.  The People concede that defendant made a prima facie case and that the matter should be remanded for an evidentiary hearing.  We agree.

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 [(2017-2018 Reg. Sess.)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats 2018, ch. 1015, § 1, subd. (f).)  In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second

7

degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.'" (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

In this case, the superior court denied defendant's petition at the prima facie stage under section 1170.95, subdivision (c). "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; accord, *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142, review granted Oct. 14, 2020, S264284.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s]

8

facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.""" (*Ibid*.)

"Appellate opinions . . . are generally considered to be part of the record of conviction. [Citation.] However . . . the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid*.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court [shall] issue[] an order to show cause, and then . . . hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'" (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

First, the court erred in denying defendant's petition at the prima facie stage. Defendant alleged she had been convicted pursuant to the natural and probable consequences doctrine, was not the actual killer, had not intended the death of the victim,

9

and was not a major participant acting with reckless indifference to human life. A review of this court's opinion on appeal from the judgment (*Watson*, *supra*, E031790) contains no facts refuting the allegations in defendant's petition. Thus, defendant demonstrated a prima facie case for relief.

Second, the court erred in applying a substantial evidence test rather than "acting as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) The existence of sufficient evidence to support defendant's murder conviction does not foreclose her from relief under section 1170.95 as a matter of law.

Third, any error in denying the petition without an evidentiary hearing was not harmless because it is possible the jury convicted defendant under the natural and probable consequences theory. Any determination of what theory the jury convicted defendant, to the extent necessary, must be conducted at an evidentiary hearing where the court engages in "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

In our opinion on appeal from the judgment, we noted that "the prosecutor relied on two theories of aiding and abetting to prosecute defendant, namely, that defendant aided and abetted either the crime of first degree murder or the crime of assault with a firearm of which murder was the natural and probable consequence." (*Watson*, *supra*, E031790.) We previously held that in its instruction of the jury on the latter theory, the trial court's misidentification of the target crime as murder, rather than assault with a

10

firearm, "had the effect of requiring the jury to find beyond a reasonable doubt that defendant aided and abetted the crime of murder." (*Watson*, *supra*, E031790.) Thus, we held that even if the court erred in not holding an evidentiary hearing on defendant's petition, any error was harmless because, under either theory, the jury had necessarily determined that she had intended the death of the victim.

Defendant contends that this court's decision in *People v. Jenkins* (2021) 70 Cal.App.5th 924 (*Jenkins*), compels reversal. In *Jenkins*, "the jury instruction on the natural and probable consequences doctrine [likewise] erroneously identified murder as the target offense, thereby requiring that in order to convict [the defendant] of murder on a natural and probable consequences theory, the jury had to find that he directly aided and abetted murder." (*Id*. at p. 927.) Nonetheless, "a later paragraph of the same instruction told the jurors that they did not have to agree unanimously on the target offense that [the defendant] aided and abetted." (*Ibid*.) This court held that the "jury therefore did not necessarily find that [the defendant] directly aided and abetted murder"; thus, this court reversed the trial court's order denying the petition without issuing an order to show cause. (*Ibid*.)

Here, when instructing the jury with CALJIC No. 3.02, the court misidentified the target offense as murder; however, the court also instructed the jury, "You are not required to unanimously agree as to which originally contemplated crime the defendant

11

aided and abetted . . . ."[4] We agree with *Jenkins* that the court's inclusion of that paragraph means it is possible that the jury did not find that defendant was a direct aider and abettor because the jury may not have agreed, unanimously or otherwise, that she intended to abet the target crime of murder. (*Jenkins*, *supra*, 70 Cal.App.5th at p. 936.) "If the instruction had omitted that additional paragraph, we might have been forced to conclude that the jury necessarily found [the defendant] aided and abetted murder, under either the erroneous natural and probable consequences instruction or the direct aiding and abetting instruction." (*Ibid.*) However, "the instruction given does not permit that conclusion." (*Ibid.*)

Thus, we shall reverse the order denying defendant's petition and remand the matter with directions to the court to issue an order to show cause under section 1170.95, subdivision (c), and to hold a hearing under section 1170.95, subdivision (d). We express no opinion regarding whether defendant is entitled to relief following the hearing.

---

[4] We note that at the time we issued our opinion on appeal from the judgment (*Watson*, *supra*, E031790), the actual jury instruction was not part of the record. (See fn. 3, *ante*.)

12

## III. DISPOSITION

The order denying defendant's petition is reversed.  The matter is remanded to the trial court with directions to issue an order to show cause and hold an evidentiary hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

I concur:

MILLER
J.

13

[*P. v. Watson*, E072650]

MENETREZ, J., Concurring.

I agree that the order must be reversed under *People v. Jenkins* (2021) 70 Cal.App.5th 924.  I therefore concur in the judgment.


MENETREZ_____

J.

1